UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KEVIN MATTHEW COOK,**

        **Plaintiff,**

v.                                            **Case No:   6:14-cv-1508-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Kevin Matthew Cook (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits. Doc. No. 1. Claimant alleges an onset of disability as of May 7, 2011, primarily due to post-traumatic stress disorder ("PTSD"), anxiety, depression, and orthopedic issues. R. 70, 103, 104, 198-199. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to apply the correct legal standards to the opinions of Claimant's treating psychiatrist, Dr. James A. Hunt, by generally giving his medical opinions great weight, but then failing to account for all the limitations contained within his opinions in the ALJ's residual functional capacity assessment (the "RFC"). Doc. No. 15 at 20-23.[1] For the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

---

[1] Claimant also argues that the ALJ erred by failing to: find Claimant's PTSD and attention deficit disorder to be severe impairments at step-two of the sequential evaluation process; and articulate explicit and adequate reasons for finding Claimant's subjective allegations not credible. Doc. No. 15 at 15-18, 31-33. However, for reasons set forth below, the ALJ's handling of Dr. Hunt's opinions is determinative.

**I.      THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

**II.     STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. <u>ANALYSIS</u>.

At the center of this dispute is the ALJ's handling of the opinion evidence from Claimant's treating psychiatrist, Dr. James A. Hunt. Doc. No. 15 at 20-30. The record before the ALJ contains three (3) medical opinions from Dr. Hunt, who treated Claimant approximately forty-three (43) times from June 10, 2010 through August 16, 2013 (R. 555-72). R. 491-93 (August 21, 2012), 499-501 (June 28, 2013), 580-81 (June 10, 2010). Dr. Hunt's opinions are the only medical opinions in the record from a treating or consultative examining physician related to Claimant's mental health impairments and limitations. The record does contain a mental residual functional capacity assessment ("MRFC") and Psychiatric Review Technique ("PRT") from Dr. James Mendelson, a non-examining physician. R. 93-94 (PRT), 98-100 ("MRFC").[2]

---

[2] *See Shafarz v. Bowen,* 825 F.3d 278, 279-80 (11th Cir. 1987) (opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician); *Magill v. Commissioner of Social*

Claimant raises two somewhat distinct allegations of error with respect to Dr. Hunt's opinions. Doc. No. 15 at 20-23. First, Claimant argues the ALJ failed to apply the correct legal standards to Dr. Hunt's opinions by giving them "great weight," but then failed to account for or otherwise address portions of those opinions that were more restrictive than the ALJ's ultimate RFC. Doc. No. 15 at 21. Thus, although the ALJ generally gave Dr. Hunt's opinions "great weight," Claimant maintains that by failing to address those portions of the opinions that conflict with the ALJ's RFC, the ALJ failed to comply with the legal requirement that the ALJ state with particularity the weight given to medical opinions and the reasons therefor. *Id*. Second, Claimant argues that the ALJ erred by giving "great weight" to Dr. Mendelson's opinion and incorporating the limitations contained therein into the ALJ's RFC because Dr. Mendelson's opinions conflict with Dr. Hunt's opinions, and the opinions of a non-examining are not good cause to reject the opinions of a treating physician. Doc. No. 15 at 21-22. Therefore, in short, Claimant argues the ALJ failed to adequate address conflicts in the medical opinions at issue.

The Commissioner acknowledges that the ALJ gave Dr. Hunt's opinion "great weight," and that some of Dr. Hunt's opinion's conflict with the ALJ's ultimate RFC. Doc. No. 15 at 23-25. However, the Commissioner maintains that the ALJ also "provided reasons for rejecting some of his opinions," which the Commissioner contends are supported by substantial evidence. *Id*. at 25. The Commissioner also maintains that Dr. Hunt's opinions do not conflict with Dr. Mendelson's opinions. Doc. No. 15 at 30.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining

---

*Security*, 147 F. App'x 92, 95 (11th Cir. 2005) (unpublished) (same); *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (opinions of a non-examining physician do not constitute substantial evidence upon which to base a decision when standing alone).

disability. In cases like this one, involving the ALJ's handling of such medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Commissioner of Social Security*, 533 F. App'x. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[3] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

On June 10, 2010, Dr. Hunt provided a Medical Assessment of Ability to Do Work Related Activities (Mental). R. 580-81. In it, Dr. Hunt opines that Claimant retains a fair ability to: relate to co-workers; deal with the public; use judgment; interact with supervisor(s); deal with work stresses; maintain attention/concentration; behave in an emotionally stable manner; and relate predictably in social situations. R. 580-81. "Fair" is defined as "ability to function in this area is <u>seriously limited, but not precluded</u>." R. 580 (emphasis added). Dr. Hunt bases his opinions on medical findings that Claimant is emotionally labile and irritable. R. 581. Dr. Hunt opines

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

that Claimant retains a good ability to: follow work rules; function independently; demonstrate reliability. R. 580-81. "Good" is defined as "ability to function in this area is limited by satisfactory." R. 580. Dr. Hunt further opines that Claimant is unlimited or has a very good ability to: understand, remember and carry out complex job instructions; and maintain personal appearance. R. 581.

On August 21, 2012, Dr. Hunt provided a Treating Source Mental Status Report. R. 491-93. Dr. Hunt opines that Claimant's current mood and affect are: "Bright at times, frustrated at other times. Easily becomes angry and talks of physical confrontation." R. 491. Claimant has organized and relevant thought process with no delusions or hallucinations, but Claimant is "usually focused on how others have mistreated him." R. 492. Claimant complains of poor concentration and memory since a head injury in 2011, but is oriented and there was no evidence of the same during the evaluation. R. 492. Claimant display anxious behavior and increased psychomotor movement. R. 492. Dr. Hunt diagnosed Claimant with dysthymic disorder, generalized anxiety disorder, attention deficit disorder, and characterizing disorder with impulsivity and histrionic traits. R 492. Dr. Hunt opines that Claimant's prognosis is guarded. R. 492. Claimant is capable of managing his own funds and "can perform activities of daily living," but Claimant has had a "multitude of jobs" because he is "unable to keep [them] due to emotional lability." R. 493. Dr. Hunt ultimately opines that Claimant is capable of sustaining work activity for eight hours a day, five days a week, "if no one else is around." R. 493.

On June 28, 2013, Dr. Hunt provided another Treating Source Mental Status Report. R. 499-501. Dr. Hunt opines that Claimant's current mood and affect are: "Mood very labile – Depressions vs agitation. Very angry." R. 499. Claimant displayed normal thought process, but his thought content had deteriorated to being unrealistic at times over feelings of unfair

treatment by the court system. R. 500. Claimant's concentration was adequate and he was orientated with no significant loss in memory. R. 500. Claimant's behavior was greatly agitated. R. 500. Dr. Hunt diagnosed Claimant with PTSD secondary to 2011 motorcycle accident; attention deficit disorder; and character disorder with impulsivity and poor judgment. R. 500. Dr. Hunt opines that Claimant's prognosis is guarded. R. 500. Dr. Hunter further opines that Claimant is capable of managing his own funds, working around the house, and performing "simple remodeling jobs." R. 501. With respect to whether Claimant is capable of sustaining work activity for eight hours a day, five days a week, Dr. Hunt opines that Claimant "has been unable to keep job [secondary] to interpersonal conflicts." R. 501.

Dr. Mendelson opined that Claimant is moderately limited in his ability to: interact with the general public; work in coordination with or in proximity others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or displaying behavioral extremes. R. 79-80. In sum, Dr. Mendelson opined that Claimant is capable of performing simple, routine tasks with "limited social interaction." R. 80.

In the decision, the ALJ found at step-two of the sequential evaluation process that Claimant has the following severe impairments: degenerative disc disease; degenerative joint disease; chronic obstructive pulmonary disease; depression; and anxiety. R. 110. At step-three, the ALJ finds that Claimant has mild restrictions in activities of daily living, and moderate difficulties with social functioning and in concentration, persistence or pace. R. 111. The ALJ states that the "medical evidence does not indicate that the claimant experiences any marked limitations in the functional areas." R. 111.[4] With respect to social functioning, the ALJ states:

---

[4] According to the ALJ, a "marked limitation means more than moderate but less than extreme." R. 111. As described by the ALJ, the definition of marked is very similar to Dr. Hunt's definition of "fair," which is "ability to

> In regards to social interactions, the claimant testified that he had a fiancé. The claimant also indicated that he went into public at least once per week during trips to Wal-Mart. The claimant also testified that he went to church two weeks prior to the hearing; however, he left before the service ended. These facts show that the claimant received treatment for mental health impairments and that the claimant experiences some limitations; however, the evidence does not indicate that the claimant experience marked functional limitations.

R. 112. In making this finding and throughout the decision, the ALJ does not address Dr. Hunt's 2010 medical opinion that Claimant is "seriously limited, but not precluded" in the ability to: relate to coworkers, deal with the public, use judgment, interact with supervisor(s); deal with work stresses; behave in an emotionally stable manner; or relate predictably in social situations. R. 580-81.

The ALJ determined that despite his impairments, the Claimant retains the ability to perform the following RFC:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the [RFC] to perform light work . . . except the claimant is limited to frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds; and he should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. He is further limited to occupations that require only the ability to understand and remember simple and more complex instructions, procedures, and systems; and to sustain attention and persist at routine repetitive tasks for two hour segments through an eight hour day for a full workweek. <u>He is able to interact, as needed, with supervisors and coworkers in a task-orientated setting; but should interact with the public no more than occasionally.</u> He is able to adapt to changes in the work schedule or process, if gradually introduced.

R. 113 (emphasis added). Thus, the ALJ limited Claimant to a reduced range of light work. R. 113. As set forth above, the ALJ found that Claimant is "able to interact, as needed, with

---

function in this area is seriously limited, but not precluded." R. 580.

supervisors and coworkers in a task-orientated setting; but should interact with the public no more than occasionally." R. 113. On its face, this portion of the ALJ's RFC conflicts with Dr. Hunt's opinions that: Claimant is capable of working only if no one else is around (R. 493); Claimant has been unable to maintain employment due to interpersonal conflicts (R. 501); and Claimant is seriously limited in the ability to interact with supervisors, deal with work stresses, relate to coworkers, behaving an emotionally stable manners, relate predictable in social situations, and deal with the public (R. 580-81). Thus, with respect to Claimant's ability to interact with supervisors, coworkers, and the public, Dr. Hunt's opinions are more restrictive than the ALJ's RFC. In addition, the ALJ's finding in the RFC, that Claimant is able to interact with supervisors and coworkers as needed, but is limited to only occasional interaction with the public, also appears less restrictive than Dr. Mendelson's opinions, which also contained moderate limitations with respect supervisors and coworkers. *Compare* R. 79-80 *with* R. 113.

The ALJ states the following with respect to Dr. Hunt's opinions:

> The record shows that the claimant has a history of receiving treatment for mental health symptoms, including being irritable, being easily angered, worrying, persistent sadness, prior to the alleged onset date. The evidence shows that throughout the alleged period of disability, the claimant has received treatment from James Hunt, M.D. Dr. Hunt diagnosed the claimant with various mental health impairments, including dysthymic disorder, attention deficit disorder, impulsivity and histrionic traits, and PTSD. Additionally, Dr. Hunt has counseled the claimant regarding multiple environmental stressors including interpersonal conflicts with friends and family, job problems, and legal issues.
>
> During treatment, <u>Dr. Hunt expressed multiple opinions regarding the claimant's ability to work. Great weight was given to these opinions</u>. In August 2012, Dr. Hunt noted the claimant complained of poor concentration and poor memory since his head injury. Despite these complaints, Dr. Hunt noted that the claimant showed organized and relevant thought processes with no delusions or hallucinations. Further, as noted above, a CT scan of the brain in May 2011, showed no evidence of intracranial abnormality. At this examination, <u>Dr. Hunt opined that the claimant could perform</u>

> activities of daily living and could perform work if no one else was around. In June 2013, Dr. Hunt noted that the claimant's mood was labile, that the claimant was angry, and that he fluctuated between depression and agitation. Dr. Hunt noted that the claimant expressed unrealistic thoughts about the court system and indicated that he was treated unfairly. Dr. Hunt indicated that the claimant was unable to keep a job secondary to interpersonal conflict; however, he also noted that the claimant was able to complete tasks such as working around the house and completing a remodeling job. Dr. Hunt also noted that the claimant demonstrated adequate concentration and intact memory. Finally, in January 2014, Dr. Hunt opined that claimant demonstrated considerable difficulty in interpersonal relationships because he is quite emotionally labile, easily irritated, and reacts inappropriately at times.
>
> The [ALJ] considered the above evidence and incorporated Dr. Hunt's opinions by limiting the claimant to a task orientated work setting with no more than occasional interaction with the public. Additional limitations were not included because, despite the claimant's complaints of difficulty interacting with others, the records show that he lived with his father and interacted with him on a regular basis for an extended period and that he maintains a relationship with a fiancé. The claimant also indicated that he went into public settings on occasion including going to Wal-Mart and going to church.

R. 116 (emphasis added). Thus, although the ALJ does not specifically discuss Dr. Hunt's 2010 opinion (R. 580-81), the ALJ clearly recognized that Dr. Hunt expressed multiple opinions. R. 116. The ALJ gives Dr. Hunt's opinions great weight, which includes a discussion of Dr. Hunt's opinion that Claimant was unable to keep a job secondary to interpersonal conflicts and that Claimant can work only if no one else is around. R. 116. The ALJ then states that she "incorporated Dr. Hunt's opinions by limiting the claimant to a task orientated work setting with no more than occasional interaction with the public." R. 116. The following limitations provided by Dr. Hunt are more restrictive than the ALJ's RFC limitation to a task orientated work setting with no more than occasional interaction with the public: serious limitation in the ability to interact with supervisors, relate to coworkers, behave in in an emotionally stable manner, and relate predictably in social situations (R. 580-81); capable of working eight hours a day, five days a week

only "if no one else is around" (R. 493); and an inability to keep jobs secondary to interpersonal conflicts (R. 501). R. 116. In short, the ALJ's RFC fails to account for Dr. Hunt's limitations with respect to Claimant's ability to interact with supervisors and coworkers.[5]

The ALJ next states that "[a]dditional limitations were not included because, despite the claimant's complaints of difficulty interacting with others, the records show that he lived with his father and interacted with him on a regular basis for an extended period and that he maintains a relationship with a fiancé," and that Claimant was able, on occasion, to go to Walmart and attend church. R. 116. This statement indicates that the ALJ implicitly gave less than great weight to Dr. Hunt's opinions related to Claimant's ability to relate and interact with supervisors, coworkers, and the public because Claimant was capable of living with his father, maintain a relationship with his fiancé, and go to Walmart and attend church on occasion. R. 116.

With respect to Dr. Mendelson's opinions, the ALJ states:

> In formulating the [RFC], the [ALJ] also gave great weight to the opinions of James Mendelson, Ph.D. Dr. Mendelson opined that the claimant was capable of comprehending and remembering both uncomplicated and more complex instructions, procedures and systems. Dr. Mendelson opined that the claimant's ability to attend and persist for two hour intervals while accomplishing job tasks consisting of straightforward, recurring, and uniform steps was not seriously limited. Dr. Mendelson opined that the claimant had the ability to communicate about specific aspects of task-orientated employment and abide by standards governing basic conduct. Finally, Dr. Mendelson opined that the claimant did not have limitations in his capacity to appreciate occupational safety guidelines, secure transportation job site, and do basic planning for work activities. The [RFC] has accounted for these opinions as well.

R. 117. Thus, the ALJ also gave great weight to Dr. Mendelson's opinions, but the ALJ did not specifically address Dr. Mendelson's opinions that Claimant has moderate limitations in his ability

---

[5] There is also some question as to how a limitation to occasional interaction with the public accounts for Dr. Hunt's opinions that Claimant ability to interact with the public is seriously limited.

to relate to and interact with supervisors and coworkers, nor did the ALJ specifically address Dr. Mendelson's ultimate opinion that Claimant is limited in his social interaction abilities. *Compare* R. 79-80 *with* R. 117.

As set forth above, the ALJ's RFC fails to account for Dr. Hunt's opinions that Claimant is seriously limited in his ability to relate to and interact with supervisors and coworkers, and the ALJ fails to discuss similar limitations contained in Dr. Mendelson's opinion. The ALJ's stated reasons for implicitly giving those particular opinions less than great weight are that they conflict with Claimant's activities of daily living, *i.e.*, that Claimant was able to live with and interact with his father on a regular basis for extended periods, maintain a relationship with his fiancé, and go to Walmart and attend church on occasion. R. 116. It is unclear how an ability to live with his father, maintain a relationship with his fiancé, and go to Walmart and church on occasion conflict with or have any meaningful bearing on the opinions of Claimant's treating psychiatrist, Dr. Hunt, and the non-examining psychologist, Dr. Mendelson, that Claimant is seriously limited in his ability to relate to and interact with supervisors and coworkers.[6] Moreover, the Eleventh Circuit has stated that "participation in everyday activities of short duration, such as housework or fishing, [does not disqualify] a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Thus, without further articulation by the ALJ and reference to supporting evidence in the record beyond the generalized reference to minimal activities of daily living noted by the ALJ, the Court cannot conclude that the ALJ's decision to implicitly give less than great weight to the

---

[6] The ALJ's statements with respect to Claimant's father do not appear wholly accurate. The ALJ states that Claimant lives with his father and has interacted with him on a regular basis for an extended period. R. 116. In his function report, Claimant states that he has problems getting along with his father. R. 261. The third-party function report states that Claimant lives with his fiancé in a house owned by his father (R. 314), and Dr. Mendelson's report states that Claimant is upset with his father because he does not give Claimant enough money to live on (R. 93). At the hearing, Claimant testified that he lives with his fiancé. R. 50-51. Thus, it is unclear how ALJ determined that Claimant lives with his father and is able interact with him on a regular basis for extended periods. R. 116.

opinions of Dr. Hunt, Claimant's long-term treating psychiatrist, concerning Claimant's serious limitations in the ability to relate to and interact with supervisors and coworkers is supported by substantial evidence. *See Winschel*, 631 F.3d at 1179 ("[W]ithout clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."). The ALJ's error is further highlighted by the fact that Dr. Mendelson provided similar opinions with respect to Claimant's limitations in relating to and interacting with supervisors and coworkers, which the ALJ's decision does not specifically address. R. 79-80, 117.[7]

## IV. CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** the for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE and ORDERED** in Orlando, Florida on December 9, 2015.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[7] Because the ALJ failed to apply the correct legal standards to Dr. Hunt's opinions, the case must be remanded for further proceedings. Therefore, it is unnecessary to determine whether the ALJ also erred by implicitly giving greater weight to the opinion of non-examining physician (Dr. Mendelson) over the opinions of Dr. Hunt, or to address the Claimant's other allegations of error (*see supra* n.1). *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record).

- 14 -

Copies furnished to:
Presiding District Judge
Counsel of Record

The Court Requests the Clerk
Mail or Deliver Copies of the Report and Recommendation to:

The Honorable Bonnie Kittinger
Office of Disability Adjudication and Review
SSA ODAR Hearing Office
Desoto Bldg, Suite 400
8880 Freedom Xing Trl
Jacksonville, FL 32256-1224